JAMES C. BRECKENRIDGE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Breckenridge v. Commissioner
Docket No. 35580-84
United States Tax Court
T.C. Memo 1989-273; 1989 Tax Ct. Memo LEXIS 273; 57 T.C.M. (CCH) 651; T.C.M. (RIA) 89273; June 7, 1989; As corrected June 7, 1989; As corrected June 14, 1989; As corrected June 20, 1989 Frank Simmons, for the respondent. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: Respondent determined deficiencies in and additions to petitioner's Federal income taxes as follows: Additions to Tax
Section
Section
Taxable Year Ended
Deficiency
6653(b)(1) [1]
6653(b)(2)
December 31, 1981
$ 23,314.57
$ 11,657.29
N/A
December 31, 1982
$ 16,585.26
$  8,292.63
50% of
interest on
$ 16,585.26
The issues for decision are: (1) whether books and records taken from petitioner's residence during a search and seizure by an *274 agent of the Mississippi Narcotics Bureau and a county sheriff are admissible into evidence, (2) whether petitioner underreported his income for 1981 and 1982 in the respective amounts of $ 45,055.67 and $ 36,352.74, (3) whether adjustments made by respondent to petitioner's 1981 and 1982 claimed medical expense and sales tax deductions are correct, (4) whether petitioner is liable for self-employment taxes in 1981 and 1982 as determined by respondent, and (5) whether petitioner filed a false and fraudulent income tax return for each of the years 1981 and 1982. FINDINGS OF FACT Some of the facts of this case have been stipulated and are found accordingly. [2] The stipulation of facts are incorporated herein by this reference. During 1981, 1982, and at the time of filing his petition, *275 James C. Breckenridge, also known as "Sonny," resided in DeKalb, Kemper County, Mississippi. Petitioner filed his income tax returns for 1981 and 1982 with the Internal Revenue Service Center in Atlanta. On January 4, 1983, Robert F. Alexander ("Alexander"), an agent of the Mississippi Narcotics Bureau, obtained a search warrant from a Justice Court judge in Neshoba County, Mississippi to search petitioner's residence. Before serving the warrant, Alexander learned that petitioner's residence was across the line in Kemper County, Mississippi. Alexander then had the warrant co-signed by a Kemper County Justice Court judge. Later that same January day, Alexander and the Neshoba County sheriff served the search warrant on petitioner and searched his home. Alexander arrested petitioner for possession of several different controlled substances. Alexander also arrested Cheryl Cheatham ("Cheatham"), who was living with petitioner at the time. Incident to petitioner's arrest, Alexander seized from petitioner's home cash in the amount of $ 9,734; several firearms; seven or eight different controlled substances, including prescription drugs, hash, hash oil and marijuana; some of petitioner's *276 financial records; and various other items. The seized financial records included a "Black Cash Book" and a "Red Cash Book." The Black Cash Book listed, day-by-day and item-by-item, the amount of money spent by petitioner and Cheatham during 1981 and 1982. This financial record also contained numerous references to "Sonny." The "Red Cash Book" listed, by page, an individual's name, a quantity of drugs, and dollar amounts received by and owed to petitioner from the listed individual. Subsequent to the search and seizure of petitioner's residence, Alexander prepared an inventory of the seized items. This inventory was made a part of the search warrant. In inventorying the items, Alexander mistakenly omitted the Black and Red Cash Books from the list. Two days after the arrest of petitioner and the search of the residence, Alexander gave to Nicholas M. Montgomery, Jr. ("Montgomery"), a special agent with the Internal Revenue Service Criminal Investigation Division, the original Black and Red Cash Books. Special Agent Montgomery made copies of these financial records. Revenue Agent Robert Larry Mathis ("Mathis") subsequently received these copies of the cash books and used the *277 copies in investigating petitioner's income tax returns for 1981 and 1982. In reconstructing petitioner's income and determining petitioner's understatements of income for 1981 and 1982, Agent Mathis used the source and application of funds method of proof in his examination. No Internal Revenue agents were initially aware of or involved in the investigation of petitioner and the search of his home. The Service's involvement in the investigation of petitioner commenced with Special Agent Montgomery's receipt of the Black and Red Cash Books. On March 22, 1983, petitioner and Cheatham were indicted in the Circuit Court of Kemper County, Mississippi on nine counts of possession with intent to sell quantities of controlled substances. On November 10, 1983, by Jury Verdict and Sentencing Order filed on November 16, 1983, petitioner and Cheatham were convicted on five of the nine counts. In , the Supreme Court of Mississippi affirmed the convictions of petitioner and Cheatham on four of the five counts and upheld the validity of the January 4th search warrant against a claim of insufficient probable cause. On June 1, 1984, petitioner *278 was indicted in the United States District Court in the Southern Judicial District of Mississippi on one count of using a firearm to commit the offense of possession of controlled substances with intent to distribute. On October 26, 1984, by Judgment and Probation/Commitment Order filed on November 2, 1984, petitioner was convicted on the firearm charge in the United States District Court. During 1981 and 1982, petitioner received wages in the respective amounts of $ 20,825 and $ 19,075. These wage amounts represented the only income reported by petitioner on his tax returns for 1981 and 1982. Petitioner paid the following withholding taxes on these wages: 1981
1982
Federal income tax
$ 4,701.62
$ 3,819.90
FICA tax
1,384.71
1,278.40
State income tax
437.67
390.10
On June 1, 1981, petitioner received a check from Teri Breckenridge in the amount of $ 895 for his one-half share of an income tax refund for 1980. During 1982, petitioner received an income tax refund for 1981 in the amount of $ 1,500. As of January 1, 1981, and December 31, 1981, petitioner had respective balances of ($ 751.81) and $ 3,503.36 in account No. 678-345-0 in the Merchants *279 and Farmers Bank. As of January 1, 1982, and December 31, 1982, petitioner's respective balances in this same account were $ 3,503.36 and $ 6,931.64. During 1981 and 1982, petitioner made total principal payments on loans to the Commercial Bank of DeKalb, Merchants and Farmers Bank, and Unifirst in the respective amounts of $ 985.22 and $ 2,100.62. On May 24, 1982, petitioner paid $ 1,000 for a 1978, F-250 Ford truck. Also, during 1981 and 1982, petitioner made the following payments for personal living expenses: 1981
1982
Per tax returns:
Medicine and drugs
$    168.00
$   148.00
Medical insurance
598.00
894.00
Doctors, Dentists, Hospitals
1,645.00
473.00
Real estate tax
147.00
149.00
Personal property tax
64.00
131.00
Interest
2,408.00
1,604.00
$ 5,030.00
$ 3,399.00
Utilities
1,933.04
2,103.88
Insurance
541.01
333.86
Miscellaneous
1,994.20
- 0 - Gasoline
191.37
- 0 - Food
310.77
- 0 - Child care
70.00
- 0 - Auto repairs
247.67
1,021.40
Charge cards
1,012.69
- 0 - Building supplies
- 0 -  918.33
$ 6,300.75
$ 4,377.47
Total
$ 11,330.75
$ 7,776.47
*280 During 1981 and 1982, petitioner did not receive any gifts, inheritances, bequests, devises, or loans, other than as stated in these findings of fact. Moreover, during this same period, petitioner did not receive any nontaxable income, excludable income, cash receipts or other assets, other than as stated in these findings of fact. OPINION The first issue we address concerns the admissibility into evidence of the Black and Red Cash Books. On the appeal to the Supreme Court of Mississippi of the convictions for possession of controlled substances with the intent to sell, petitioner and Cheatham challenged the constitutionality of the January 4th search warrant on the ground of insufficient probable cause. Mississippi's Supreme Court, however, found that "there was sufficient evidence to issue a warrant." . In this civil tax case, petitioner does not challenge the admissibility of the seized financial records on the ground of insufficient probable cause to justify the underlying search warrant. He instead challenges the records' admissibility on the ground that these records were omitted from the inventory *281 of seized items as listed on the warrant. The evidence before us, nevertheless, establishes that the records were in fact seized from petitioner's residence. To resolve this first issue, we look to . In Janis, the Los Angeles police obtained a search warrant and made a search for bookmaking paraphernalia at two specified locations. The police arrested Janis and seized cash and certain wagering records which they, subsequently, turned over to the Internal Revenue Service. The Service then used the seized records as a basis for its determination of a wagering excise tax owed by the taxpayer. At a suppression hearing, in connection with the criminal charges, the same judge who had issued the search warrant granted a motion to quash it on grounds that the supporting affidavit did not state, in sufficient detail, the underlying circumstances. In a subsequent tax refund suit brought by Janis, both the District Court for the Central District of California and the Ninth Circuit Court of Appeals ruled against the Government on the ground that the assessment of the wagering excise tax owed was based upon illegally obtained *282 evidence. In reviewing the Ninth Circuit's decision, the Supreme Court phrased the issue in the following language: "Is evidence seized by a state criminal law enforcement officer in good faith, but nevertheless unconstitutionally, inadmissible in a civil proceeding by or against the United States?" . Examining the exclusionary rule's foundation, the Supreme Court opined that "the 'prime purpose' of the rule, if not the sole one, 'is to deter future unlawful police conduct'." (citations omitted). The Supreme Court then determined that excluding the stated records in Janis would be an unjustified extension of the exclusionary rule because such an extension would not "have a sufficient likelihood of deterring the conduct of the state police so that it outweighs the societal costs imposed by the exclusion." . We rely on Janis for our position that the exclusionary rule is inapplicable in the case before us. Consequently, we admit the Black and Red Cash Books into evidence. We reach this position without *283 having to determine whether the omission of petitioner's financial records from the search warrant inventory constitutes a technical flaw in the search warrant. Because collecting taxes was not the objective of the search of petitioner's residence, our excluding petitioner's seized financial records in this civil tax case would have no influence on agents of the Mississippi Narcotics Bureau and, thus, would not serve the exclusionary rule's purposes. See ; . Having held that the Black and Red Cash Books are admissible, we further find that, based on the entries in the Black Cash Book, petitioner had additional personal living expenses of $ 43,680.53 in 1981 and $ 37,133.97 in 1982. When these additional amounts are added to those personal living expenses listed in our findings of fact, we note that petitioners' total living expenses equalled $ 55,011.28 in 1981 and $ 44,910.44 in 1982. To determine petitioner's additional income for 1981 and 1982, respondent used the source and application of funds method of proof. Calculations based on this method *284 of proof result in the following amounts of additional income: 1981
1982
Applications:
Cash in bank at end of year
$  3,503.36 $  6,931.64
Taxes withheld on wages:
Federal income tax
4,701.62 3,819.90
FICA
1,384.71 1,278.40
State income tax
437.67 390.10
Loan payments
985.22 2,100.62
Ford truck
1,000.00
Personal living expenses
55,011.28 44,910.44
Total
$ 66,023.86 $ 60,431.10
Sources:
Cash in bank at beginning
of year
$ (751.81)
$ 3,503.36
Wages
20,825.00 19,075.00
Tax refunds
895.00 1,500.00
Total
$20,968.19 $ 24,078.36
Additional income
$ 45,055.67 $ 36,352.74
We now turn to issues two through four. Issue two deals with petitioner's underreporting his income in 1981 and 1982 in the respective amounts of $ 45,055.67 and $ 36,352.74; issue three deals with adjustments to petitioners' claimed medical expenses and sales tax deductions; and issue four focuses on petitioner's determined liability for self-employment taxes. Petitioner bears the burden of proof with respect to each of these three issues. Rule *285 142(a); . In resolving these three issues, we initially set out an exchange, which occurred at the trial of this case, between this Court and Mr. Brock, then attorney for petitioner. The exchange began with a discussion of the admissibility of the Black and Red Cash Books. THE COURT: Janis? All right. That's the one I'm talking about, and I don't think there is any doubt about the admissibility of those books in this Court. Now based upon that and the Court is disposed to go ahead and rule on that right now and state that they are admissible. With that in mind, Mr. Brock, do you want to go on with this case? MR. BROCK: We have no evidence to offer, Your Honor. As I said, our only contention is that the books would not be admissible at this time. Petitioner has presented no evidence to overcome the presumption of correctness which attaches to respondent's determination with regard to these three issues. ; , cert. denied . Moreover, he *286 has addressed none of these three issues on brief. We, therefore, hold that petitioner has failed to carry his burden of proof and has implicitly conceded the properness of respondent's determination with regard to these three issues. Rules 142(a), 149(b); cf. . [3]
We next consider respondent's position that petitioner's underpayments of income tax for the taxable years 1981 and 1982 are due to fraud. Section 6653(b) [4] provides an addition to tax of 50 percent of the amount of a tax deficiency if any part of the underpayment is due to fraud. To sustain a fraud determination under section 6653(b), respondent has the burden of proving by clear and convincing evidence (1) that there was an underpayment of tax, and (2) that some portion of the underpayment was due to fraud. Sec. 7454(a); Rule 142(b); *287 . Respondent has shown that petitioner underpaid his taxes for 1981 and 1982. Accordingly, the first element of fraud is established. To establish the second element under section 6653(b), respondent must demonstrate by clear and convincing evidence that the taxpayer had a specific intent to evade a tax due and owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. , cert. denied ; , affg. a Memorandum Opinion of this Court; , affd. without published opinion . Fraud must never be presumed or decided on the *288 basis of suspicion. ; . Nonetheless, fraud need not be established by direct evidence, but may be established from all relevant facts and circumstances. ; , affd. without published opinion . The taxpayer's entire course of conduct may establish the requisite fraudulent intent. ; . After an examination of the entire record in this case, we conclude that respondent has successfully carried his burden of proof. The record in this case is replete with facts, introduced by respondent and left unchallenged by petitioner, which underlie our holding of fraud. The record includes evidence that petitioner's respective understatements of income for 1981 and 1982 were $ 45,055.67 and $ 36,352.74. These understatements were over 215 percent and 190 percent of *289 the respective income reported by petitioner in these two taxable years. These are large omissions and are not mere, unintended omissions. See , affg. a Memorandum Opinion of this Court. The Fifth Circuit has stated in , that "the repeated omission of reportable income is not a mere omission." (Emphasis in original.) In this case petitioner has failed to report substantial amounts of income for two years. "[R]epeated understatements in successive years when coupled with other circumstances showing an intent to conceal or misstate taxable income present a basis on which the Tax Court may properly infer fraud." , affg. on this issue a Memorandum Opinion of this Court; . No shortage of "other circumstances" exists in this case. For each of the years 1981 and 1982, petitioner maintained in his Red Cash Book a meticulous record of his drug sales, including each customer's name, the quantity of drugs sold, and the amount *290 of money received by and owed to petitioner by each listed person. Petitioner had only to consult this book to calculate precisely his income from the sale of drugs. We infer from his failure to consult his own records that petitioner made a conscious decision not to report this illegally-sourced income. Moreover, petitioner has offered no explanation for his failure to report the unreported income. This Court has held that "exceedingly large discrepancies between the petitioner's actual net income and the net income reported on the tax returns do constitute evidence supporting fraud, when such discrepancies are unexplained." . Having considered respondent's arguments and the evidence in this case, we find that respondent has successfully carried his burden of proof by clear and convincing evidence. Accepting such, we sustain the addition to tax determined against petitioner under section 6653(b). To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Pursuant to an order dated December 3, 1986, we declared that "the facts and evidence set forth in respondent's proposed Stipulation of Facts are accepted as established for purposes of this case." (Order of December 3, 1986) At trial, then attorney for petitioner, Charles Brock, acknowledged our December 3, 1986, order and agreed that respondent's proposed facts represented stipulated facts.↩
3. , affd. without published opinion ; , affd. without published opinion .↩
4. Sec. 6653(b) provided, in pertinent part, as follows: (b) Fraud. -- If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. * * *↩